The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Ms. Platt. Thank you, Your Honor. Good morning. Good morning. You may proceed. Thank you. Good morning and may it please the Court, Caroline Platt on behalf of Anthony Buster. We ask this court to reverse the district court on any of three bases. First, the police lacked reasonable suspicion for the warrantless seizure of Mr. Buster, both because there was no reasonable suspicion of any criminal activity that Mr. Buster either had or was engaging in at the time of the seizure, both of any gun fire or gun activity and also that he was the person who had engaged in the domestic assault activity. Second, the police lacked reasonable suspicion that the person they seized was armed and dangerous to support the frisk, so the gun could be suppressed because the frisk lacked reasonable suspicion as well. Third, the un-Mirandaized statements were not admissible under the Quarles exception to the Miranda doctrine. And finally, as the Court has asked us to address, these issues are justiciable under this Court's decision in United States v. Bundy. To begin with, the seizure, unless the Court wants me to begin with the Rule 11 issue. The district court's opinion— I'd appreciate you addressing the Rule 11 issue first, if you don't mind. Certainly, Your Honor. I'd be happy to. I think this Court can address these issues under the Court's decision in Bundy. I'm sorry. An issue can be preserved in a plea agreement if it requires dismissal of charges or suppression of essential evidence. And in Bundy, the definition of essential evidence is—excuse me—is to be addressed—is determined by the government, which makes sense since they have the burden of proof. And the time under the advisory— it is determined by the government, but they get some deference on it. But it's not dispositive. And instead, under Bundy, it has to be, and the Court's sort of clear about it, it has to be case dispositive. Right? There can be no trial—and I'm quoting, right? No trial after the issues are resolved. Right? It will—granting your motion or agreeing with you, quote, will guarantee dismissal. So, yes, Your Honor. So, first of all, so our first position, our answer to that, Your Honor, would be that inculpatory statements of an accused criminal defendant cannot be harmless beyond a reasonable doubt. In this case, these statements are inculpatory statements by a criminal defendant. But do you agree—let me just ask the factual question. I think this is obvious, but that if we agree with you only on the Fifth Amendment issue, it would not guarantee dismissal of the criminal case against your defendant. I don't agree with that, Your Honor. I think that the government cannot show that the dismissal would—I don't think that the government would be able to show that the Miranda error is harmless beyond a reasonable—I think this is the same standard, right? Harmless beyond a reasonable doubt. Because, for example— It's not the same standard at all, right? Because the question is whether the suppression of that evidence would require—guarantee that the government would dismiss its charges, not retry it, not try it based on other evidence, right? What the court said is it would guarantee dismissal. Now, I don't want to spend too much on this because I might be sympathetic to the rule being wrong. But I want to make sure I understand what the rule is first. And it seems like to me it guarantees dismissal. I don't see how you would say the government must dismiss. I mean, if the district court below had granted your Fifth Amendment claim, right, and suppressed that statement, right, that gun and knife, do you think they would have been required to dismiss your case? So the reason I think that, Your Honor, is because the government agreed to the preservation of this issue in the plea agreement. And that is the government's time to make that determination of whether the evidence is essential. And so they cited Bundy in this plea agreement. And it's the government's determination, and they made it in this plea agreement. And then under also the language of Bundy, page 648 of Bundy, the ultimate decision belongs to the district court who accepted this plea agreement. So this issue under Bundy has been settled in this case by the government proposing and accepting this plea agreement. So you agree as a factual matter. I understand. Okay. So your position is we can't evaluate the district court, government, and your client's decision that it would guarantee dismissal. But I'm asking sort of as a factual matter. I mean, you're an experienced, quite competent lawyer, right? If the statement that's here, which seemed to be insignificant in the scope of the evidence that was presented, would the government be required by law to dismiss the case? Well, I don't think the government is ever required by law to dismiss a count, Your Honor. But I think, again, inculpatory statements of an accused criminal can never not be deemed essential evidence. And, again, it's up to the government to determine that. In this case, they did determine that. And so I'd like to draw the court's attention to the 1983 advisory committee notes for Rule 11, which I delved deep into, as you might imagine, in preparation for argument. It speaks of things that the rule, and this is cited, part of which is cited in Bundy. The things that the rule and the Bundy court contemplated as being properly preserved in a conditional plea are motions to suppress and alleged constitutional violations. And so this case falls squarely within what is contemplated by Rule 11A2, as opposed to Bundy, which was a motion to compel. It was a discovery dispute. I think that's on the other side. And this kind of Miranda issue is well within what's contemplated being preserved. And so I think that's our best answer, Your Honor, is the advisory committee notes and Bundy itself. A motion to compel is one thing, and a Miranda violation is a different thing. So can I ask a slightly different question? So why shouldn't we actually just reconsider Bundy altogether? I mean, let's imagine hypothetically at least one member of the panel thinks that it's completely wrong, and maybe more. I don't know. And why instead of trying to play with the margins here, you make this reference at some point we should reconsider Bundy as an alternative argument. Why, from your perspective, and I'm asking as an officer of the court, why from your perspective is the better approach for us to try to maybe carve out an exception for confessions to Bundy as opposed to trying to get Bundy right as a matter of principle? First of all, Your Honor, I think, as I said, I think within the scope of Bundy, this panel can address the merits of my case within Bundy without doing that. I think if the court wants to clarify Bundy and get a better rule than what the government alleges here is the Bundy rule, as I said, the advisory committee notes to Rule 11 contemplate conditional plea agreements properly preserving and the court addressing. And the language is, as I said, it's in the advisory committee notes. The language is motions to suppress and, quote, rights guaranteed by the Constitution. And so I think if you want to clarify the Bundy rule as what is properly preservable, Miranda violations such as this one fall squarely within what is contemplated properly by the rule. So that would be a clarification of Bundy. Can I ask one follow-up question on that? And then I'll let my colleagues go. I apologize for monopolizing your time. But is that if we were writing on a clean slate, be that as an en banc court or imagine Bundy did not exist, do you think that is the right rule? Or is the right rule actually just looking at the text of 11A2 and saying that it doesn't have to be essential or case dispositive or material even as long as all three of the interested parties below agree? And maybe there's some abuse of discretion if they try to preserve the price of tea in China. That might not work. But otherwise, the rule just says that, you know, if everybody agrees, then you get to appeal the issue. Your Honor, I think that I don't think I think this is an interesting question legitimately as I think the court does. And I don't think there's that much daylight between suppression of essential evidence and case dispositive. I think Bundy may have said something a little bit stronger than the rule says. But suppression of essential evidence, which is the second half of the first half of, as the court knows, is dismissal of charges and or suppression of essential evidence. I really don't think there's that much daylight between that and what Bundy says, which is case dispositive. Right. So I think to the extent there is daylight, I think my advisory committee note answers it, which is rights guaranteed by the Constitution and motions to suppress are. But my question is even slightly different. So I get your point. Right. So there's a Bundy standard. There's the committee note standard. And then there's the actual rule, which doesn't say any of those things. Right. It doesn't require that it be material or a motion to suppress or case dispositive. It doesn't require any of those things. If I may, Your Honor, suppression of essential evidence implies a motion to suppress. And essential evidence is pretty close to it. It's not case dispositive, but it's close. Right. I think that's what I'm saying. That's not in the rule. Right. I'm sorry. I'm looking at my notes. It's not. So you're reading from the committee notes, which I totally get. Right. I'm not. This is not a critique, but the rule itself doesn't say any of those things. My background. I'm looking at notes rather than the book. No, that's totally fine. And so my question is, why are we fighting between the committee notes, the examples the committee note gives, and Bundy, which we can debate whether there's a delta or not. I understand your position. But the rule doesn't include any of those things. Right. It seems like to me that Bundy adopted a stricter standard than the rules set out. And so the question is why it did that and whether that makes sense. I think, frankly, Your Honor, the government having ultimate say over what rights my client can preserve in a plea and the court, the district court, also having say over that is a rule that makes sense for preservation of judicial resources and court administration and all that. But I think the existing rule, which is in Rule 11 itself, right, those requirements are in Rule 11, I think does take care of those concerns. I really would like to address the merits of my client's constitutional claim, if that may. So I'd like to note, as we've said at some length, the Terry stop was illegal. And the courts on page 236, the court laid out three things that they think justify the Terry seizure. And I have sort of five reasons why they don't. But I came to a sort of important realization last night that I'd like to draw the court to that I didn't write about it at length in my briefing. So if I may, my friend on the other side and I spent a lot of time debating whether this was a seizure that should be judged under the Mendenhall free to leave standard or the Hodarity physical seizure standard. And I think that answer has been has been given by this court in the United States versus black, which we did cite at length in our briefing in footnote three of black that this court's 2013 decision. It cites Brendan versus California from the Supreme Court and notes that when the access is a quote from black, when the actions of the police do not show an unambiguous intent to restrain. That's the end of the quote. Hodarity's force or submission test yield to the Mendenhall test. And so here, as I as I did note on page 14 of my friend's red brief, they say that, you know, it's not clear to them that the government's show of authority was sufficient to even rise to the level of a seizure. I think that concession here shows that this is this is a case that should be governed by the Mendenhall free to leave standard. I think this court's decision in black makes that clear. Can I ask you a question about the first thing? One of the first things you said on the merits, which is that there is no evidence of a crime. I will confess, I think that is the weakest part of your argument to me, because I watched the video and the victim says he hit her in the face. And at that point, there is probable cause to believe. Now, I understand the question about whether the man on the street is the man who was in the apartment. But it strikes me that there was clearly probable cause to believe that the man in the apartment had committed a battery at absolute minimum. So could you address that? Yes, I'm sorry I misspoke. I would say there's no evidence of a gunfire crime having been committed. And as we noted, the police supervisor ruled that that was mere speculation, which we think under the definition of the word speculate, that would be less than a hunch, which is not. Sure, but they don't need they need reasonable suspicion of a crime, not of a gunfire. So the assault. Yes, please. As to the assault, Your Honor, both both officers, Officer Tyree Williams, who is the officer talking to the girlfriend in the apartment, and Officer Wilson, who is the officer pursuing somebody in Creighton Court all night, both testified or Tyree Williams told the girlfriend and Wilson testified at the hearing. They were not going to pursue the domestic assault. Right. Yes, there is. But I don't understand why that if you have a case, please, I'd love to hear it. I don't know what that has to do with whether there was a reasonable suspicion that he committed a battery. That may be a prediction about how likely a prosecution is. But I don't know there's any authority for the proposition. That means there's not reasonable suspicion that he did that. I think there's reasonable suspicion that somebody did that. That somebody did that. You're right. You're right. So I don't want to concede. No, understood. Identity. Yes. So I think, Your Honor, so I think this is I've spent a lot of time thinking about this. I think especially with domestic violence, I think whether a reasonable officer would seize somebody for a crime that they've said they're not going to pursue, particularly in a domestic violence situation. I don't have a case on this, Your Honor, because what a reasonable police officer would do is the standard. It's obviously an object. Well, no, no. I don't think that's the question. The Supreme Court has said over and over again that we can't say whether a I'm thinking of Wren and cases like that. We can't say what a reasonable officer would do in the world. We have to say what a reasonable officer could do legally. Right. And so this is and this is, again, in a domestic violence situation, Your Honor, I mean, these officers have said they won't pursue the boyfriend in the absence of the woman wanting them to because and I think we could all speculate as to why that would be in the domestic violence scenario as opposed to, for example, drug dealing or any other kind of crime. Right. And so all I can say is that these officers have told her and also have told the district court that they are not going to do that. That is not a domestic violence investigation at that point. I don't have a case on that, Your Honor. And then I only had one other question on the armed and dangerous point, which I will say right now, I think is a tough issue for the government. What do you do with the officer testimony that your client was reaching for the bag while he was being handcuffed, which strikes me as one of their better arguments? So I think as we as we know in our briefing, Your Honor, at that point, I think, first of all, the the the sort of frisk has already begun. And so because they've taken him down and they're already and there is testimony in the record. My first answer to that question, if I may, Your Honor, is that Officer Tyree Williams in the suppression hearing. I'm sorry, I don't have the exact page. I can try to find it on rebuttal. Officer Tyree Williams testified that it was Officer Wilson who had manipulated the bag around that the front part of the fanny pack was in front at that point. And also at that point, I would say at that point, the seizure and the frisk part, the search has already begun. And under DeRay and a rack of other cases, the frisk cannot be justified by what has happened during the frisk. It has to be justified before it begins. And so I think anything that happens at that point can't be used to justify armed and dangerous. I think it's my first answer to that point. And I'm trying to remember if I answered all of your questions. I get it. OK. And so the other thing I would say. I mentioned my ground point, my favorite, so I'm sorry. I've lost gone around circles. I've lost my track of my points. So if I could go back to the seizure, I think I'd like to note just going back to the district court's points. The court relied on this seizure of Mr. Buster on Fairfield Avenue being close in time and place to the domestic assault incident back at Ms. Anderson's apartment. This was 40 minutes later, and it was several blocks away. And under this court's decision in Massenburg, that is farther away and way more remote in time. So I would say that neither of those factors justify reasonable suspicion, even limiting it to identity and also the domestic assault crime. As I said, under the Mendenhall test, Mr. Buster's flight from the police should not be considered because it was after the Mendenhall seizure took place. And even if the court did decide to consider it, if it considers the seizure to be. I'm sorry, can I back up and make sure? Which flight? I mean, there are three flights. You're not alleging the first two were after a seizure, are you? I'm not. Well, I do not think that there's evidence, sufficient evidence in the record that those that the person that Officer Wilson saw earlier was Mr. Buster. And so I was referring to what happened on Fairfield Avenue. So, but correct, whatever happened earlier would be understood. Yes. Whatever happened earlier would be before the seizure if you think it was the same person. And then finally, I would like to note that to the extent that anyone thinks that the nature of Creighton Court is a high crime area, which it certainly is, statistically speaking, is relevant. Which under this court's decisions in Massenburg, Black, and Curry is a factor always of limited relevance. When the police are seeking one person, and we wrote this pretty clearly, I think, in our reply brief. As opposed to investigating public crime like prostitution or drug dealing. Whether or not person A on the street is of an identity with John Doe for whom they are searching. So the nature of the crime statistics in that area is of zero logical relevance to whether or not the person you have caught is the person you are seeking. So we'd argue in this case the high crime factor is of even less relevance than it ever is. And so the court erred in relying on that factor in this specific domestic assault case as well. I see that my time has expired. If the court has no further questions, we would ask this court to reverse the district court. Thank you, Ms. Platt. Thank you, Your Honors. Mr. Grotto-Mikkelson. Good morning, Your Honors. May it please the court. I can start, if Judge Richardson would like, with the Bundy issue as well, since it's sort of the condition precedent to the rest of the case surviving. Setting aside the fact that Bundy is binding, I think the rule in Bundy makes good sense for a couple of reasons. If a defendant is preserving an appeal on a particular issue and then succeeds at the court of appeals, the remedy in Rule 11 is just vacature of the plea. And it's sort of set back to the pre-plea state of affairs, and whichever rulings control on motions to suppress their constitutional rights are then bound. But then the government has to make an independent determination of whether to continue to try the individual, given those holdings, or not. And as Bundy, I think, very clearly articulated, if that is sort of a non-essential issue, if the government doesn't need a particular piece of evidence, doesn't care about it particularly strongly, it's just going to go to trial anyway, and there will have been an entire series of plea proceedings and appeals that happened when they were just unnecessary. As to your question about the tax— Help me understand. I'm just trying to understand why the government supports this rule at all. Because it means that you're, both you, and I don't mean you personally, obviously, but your office, is no longer able to reach agreements on issues that are not case dispositive, right? Or allow appeal of non-case dispositive issues. But we know that non-case dispositive issues can still be really important to the decision on whether to go to trial or not, right? So maybe not in this case so much, but we can certainly imagine a case where there's physical evidence sufficient to try someone, but the confession is really the nail in the coffin. And so whether the confession comes in or not would be a really important piece of information for the defendant in particular, but for the government as well to know whether it's going to come in or not come in to evaluate those choices. But it might not be case dispositive. In fact, often is not case dispositive. And so why is it that the government wants to eliminate the tool of permitting a defendant to plea guilty and preserve a really important piece of evidence, but maybe not a case dispositive one? Why is that a rule that the government thinks is a good idea? I think the same considerations for the government apply to what the court decided in Bundy. The government, when taking a plea, part of what they're bargaining for is not having to go to trial, saving of prosecutorial resources, time, energy, getting a defined resolution to a case. I 100% agree, but you can do that in your own discretion. So what I'm trying to figure out is why is there a judicial, why you favor a judicial? Because all you have to do is say, nope, not going to agree. Unreviewable discretion. It's only when your trial counsel, your line AUSA, wanted to agree. Or maybe there wasn't a meeting of minds here, but whatever it is. Why is it that a judicial rule that trumps your executive discretion to reach these agreements or not, why is the government in favor? And you began by saying this is a good rule. I get your point. It's a binding rule. I agree with that. But I don't understand your argument that it's a good one. I think it's because the way Rule 11 is phrased with both the court and the government having to consent is designed to provide independent checks on the process. And so in cases like this one where we make a mistake and accidentally preserve an issue that is not case dispositive, the Bundy rule ensures that the resources of both the government and the court are saved minimally possible. And I realize it's sort of ironic we're here at argument. So, but why would we give you the second bite at the apple, right? I mean, all right, so let's assume you're right. And this was just like a mess up, right? Which it happens, right? Lawyers make mistakes. So do defendants. But why is it that you're the one getting the second bite of the apple as opposed to us relying on your executive discretion, the defendant's voluntary agreement, and the district court's own review? I'm not sure I would agree that we are getting a second bite at the apple. This is not an opportunity for the government to go back and get a better plea bargain. The defendant might choose that he wishes to preserve these issues and make us go to trial and prove our case. The power about whether or not to preserve these issues for ultimate review by this court rests entirely with the defendant. He has the option to elect to go to trial and put the government to its burden of proof or to decide these issues are not important to him and then take a plea. So I don't think this is a situation where we're getting a benefit out of the Bundy rule that is sort of unfair because we get a second bite at the apple. So do you read Bundy to say in this logical or illogical extent that if you go back and the defendant says, well, you know what, I still want to plead guilty, but I want to preserve, that could never happen because it would be a stone you could never pull up the hill, right? You'd be back where we are. Yes, Your Honor. The defendant would have the option to either plead without the non-case dispositive issue being preserved, or if he wishes to preserve the issue, he could then make the government go to trial. And then the government would have to make a determination. Do we want to introduce that piece of evidence and have it be part of a harmlessness analysis on the back end? Or we might omit the evidence entirely because we don't want to buy the issue of it for issue. But you still want to keep your district court ruling on the suppression motion, don't you? Yes, Your Honor. You want that. Yes, Your Honor. But you don't want us to be able to now determine whether or not that was legally correct. Now, Your Honor? Yeah, now, today. Well, at least 75 days or so from now. As if the chief might be longer if it's me. No, Your Honor. And part of this is Bundy is binding on the government as well. And we felt we had a duty to bring it to the court's attention when we realized the issue was not case dispositive. This court is free to apply Bundy how it sees fit. It is the court's rule. But in this circumstance, we think that for the judicial economy and the prosecutorial economy of the situation, it's much better dealt with with either a plea that is, in fact, final and binding, conditioned on a case dispositive issue, or going to trial where the government puts forth its evidence and tries its best case. Unless the court has further questions on Bundy, I'll move to the Terry stuff. So, one of the points that my friend on the other side suggested is that there's a difference between the Hodari D standard and the Mendenhall standard about free to leave seizures, which is so authority versus physical force. And I don't think that's borne out in the case law. The Mendenhall standard articulates two independent requirements for a seizure. There has to be an indication from the police that a detention is happening, or indication sufficient to tell the person, a reasonable person, that they are not free to leave. That requires both actions by the police that communicate that, and a reasonable person on the other side thinking that they are not free to leave. Well, we have that one here. You agree with that, right? Once he trips and the officers get hands on him. Once he trips? Before he trips, really? I disagree, Your Honor. Have you seen the video? The officer says, and it's better seen not by the camera on the officer who asked for him to come, but the other officers can. He's halfway down the street and the fellow is still standing there. Really, he's charging him. You don't think a reasonable person would say, wait a minute, the police officer is charging me like this. I'm certainly not free to leave because it's like a, you know what I'm saying, it's a rush on me. He wasn't walking and saying, come here, and slowly walk. He, as people say on the street, he bum-rushed him. Didn't he? I mean, you saw it. I know you counsel for the government, but you got a common sense in what you can see. He did. He didn't just. I agree, Your Honor. It was a fast approach. What's the other problem we got to get in Mendenhall, would you say? There's one. What's the second one? So the second one is that they have to indicate to a reasonable person that they do not feel free to leave. So you need actions of the police to rise to a certain level, and then you need the reasonable person on the other side not to feel free to leave. And it is a totality of the circumstances analysis. But what Hodari D. did, and cases applying Hodari D. subsequently, is they said, when there is no submission to the show of authority in the first place, a seizure has not occurred because the Fourth Amendment doesn't touch attempted seizures. It only touches actual seizures. And so unless the person submits to the show of authority in the first place, they haven't been seized within the meaning of the Fourth Amendment. And here, as my friend points out in her briefing, the defendant was trying to get away. He did not submit to whatever show of authority, if this Court believes there was a show of authority. He did not submit at all, and it wasn't until the officers got their hands on him that the physical component of seizure had been met, and he had been therefore seized. I just want to make sure I understand the argument. Your basic point, as I take it, is after the recent Supreme Court decision in Torres, at least, but probably before that, if there's physical force applied, it matters not whether you submit. So if I grab you and you pull away, physical force has been applied, so your submission matters not. That's a seizure. In contrast, no matter how menacing or, you know, imposing my approach is, and no matter how reasonable your belief is, if you turn and run before I get to you, that's what Hidari D. tells us, it matters not the show of authority or how it was understood because you did not actually submit to it. Correct, Your Honor, and I think Stover is a perfect example of this. In Stover, the defendant was surrounded by uniformed officers, police cars with their weapons drawn, telling him to get on the ground, put his hands on his head, and the defendant kept moving around still holding a firearm. And this court held that because he was still moving around with the firearm and had not actually submitted to the show of authority yet, he had not yet been seized. And I struggle to think of a more intimate— Are you—the first part of this is what I'm trying to understand because I couldn't tell from your argument a minute ago. Are you arguing that there was no show of authority here, that it wasn't reasonably understood to be a show of authority, or only that he didn't submit to it, it doesn't matter how strong the show was? I think the show of authority question is closer than the submission question. I think there is not enough to demonstrate that this was a show of authority such that a reasonable person— All right, let's bracket that then. That doesn't matter if there's no submission. Correct. This court could assume that there was a show of authority sufficient to trigger the standard, but if the defendant does not actually submit, there is not a seizure until he's physically restrained. So when do you say there was a seizure? When they jumped on him? Yes, Your Honor, when they got hands on him after he tripped. I think at that point it's undeniable that he was seized. And what's the justification for seizing him then? Your Honor, at this point the officers had reasonable suspicion that one of several crimes may have occurred. That he ran? Is that a crime? Your Honor, it is not a crime. It is, as the Supreme Court has repeatedly noted, strong indicia of mens rea, particularly coupled with three separate unprovoked fights from police officers. But this wasn't—you don't call this an unprovoked, do you? I do, Your Honor. He charged at him. How could this be an unprovoked? The first two, Your Honor, in particular, they just called out to him or started moving towards him, and he took off running. He ran toward him. You could see him on the camera. He ran to him. He didn't just—he got out of the car and said, hey, buddy, come here, and he ran toward him. Your Honor, I don't think that constitutes provocation within the meaning of the unprovoked fight. It doesn't? I don't think so, Your Honor. The court may disagree with me. A police officer calls you and then he runs toward you. You don't think they'll provoke running? I would run, Your Honor. You might not. I would. Your Honor, I think— You might not. What do you mean you wouldn't run? Your Honor, at that point, I would think something serious is going on. I don't know if there's some sort of threat to public safety. I wouldn't start running when an officer charged at me. Wait. This to me shows why you've basically given away the game on the show of authority. You wouldn't run because you think the officer has ordered you not to. That's the reason you wouldn't run, right? I disagree, Your Honor. I think there might be something wrong happening that could be a threat to public safety. Unless he has said, hey, don't move or stop you in the name of the law, I don't think I've received an order yet. I think I would probably freeze, to be quite honest. I would just be unsure. Yeah, but the real answer is if he just beckoned you a little bit, you would immediately stop and go right to him, right? The point is you're not a representative example of the story, right? That's probably true, Your Honor. But I'm not sure that gives away because we don't really think of you as a reasonable person. Thank you, Your Honor. No offense. None taken. I have a couple of questions. I think the hardest question for me in this case is about the search of the bag, which I am not at all convinced was legitimate. So can I ask you a couple of questions about that? Definitely. So what was he arrested for? I'm struggling per the Chief's question. I don't understand what he was arrested for. He was arrested for being a felon in possession. But you didn't know he was a felon in possession at that point. You didn't know he was a felon in possession until he confirmed his identity, which was after he was cuffed. Yes, Your Honor. But, see, the cuffing at the beginning was just within the scope of an investigative detention. It wasn't yet a formal custodial arrest. But you searched the bag. Do you agree that he was – your briefing was a little confused about this. Do you think he was under arrest at the moment they searched the bag? No, Your Honor. I do not. Okay. So it's not a search incident to arrest. It is not a search incident to arrest. I think the – I would argue that the search of the bag or that Officer Tyree Williams feeling the gun in the bag was not even a frisk. At that point, she was removing the bag, which was presenting a choking hazard. I don't think her intent was to search the bag. No, but opening the bag is clearly searching the bag. Yes, but at that point, Your Honor, she had already felt the hard object inside that she testified felt like a gun to her. Well, I did not – could you – do you have a cite in the record for the proposition she said it, quote, felt like a gun to her? Because that seems very different than what I understood her to have testified to. Well, you look, I read her as saying it was hard, and to me that suggested there might be a gun in there. That is different than saying it felt like a gun, right? Yes, Your Honor. I think that's correct. I apologize. I think I overstated that. Is that under your – there's one sort of line of avenue here, like, is there reasonable suspicion he was armed and dangerous? There's a second line of avenue I think is distinct, which is sort of what I think of as the plain feel exception. That might not be the right phrasing, but that's the way I think of it. Do you think the information she provided suffices under the plain feel exception? Do you have to say, do you have to say, I knew it was a gun? Or what information does the officer have to have in order to use the plain feel exception to conduct a search? So separating the plain feel standard from the – sorry, the Terry Stott standard and the standard for a frisk, excuse me. The plain feel standard requires essentially probable cause to believe that it's contraband or a weapon that is dangerous in some fashion. I think at that point where there had been a report of a firing of a gun, the individual is attempting to reach for the bag as he's being restrained by the police. She cuts it off him and then feels a hard object inside that she said suggests to her a weapon. I think at that point you have enough under the plain feel doctrine. You're taking – you're in essence taking all of those together. The plain feel doctrine to you is you take all the Terry information and then you say there's a hard object in the bag. And the question then is do you have probable cause that it's a gun as opposed to do you have reasonable suspicion he's armed and dangerous before she touches the hard object? Correct. That's the intellectual framework. Correct, Your Honor. And I think the government would argue that we win under either standard. Do you point me anywhere where you've argued the plain feel exception to either the district court or this court? I see you as exclusively arguing this as a Terry frisk, and that's concerning to me because I'm not sure that you have reasonable suspicion that he's armed and dangerous. I don't believe we have articulated the plain feel argument. Then you can't argue, can you? Your Honor, this court has the ability to affirm on any basis that appears in the record. Can I ask this question a slightly different way? The question you've articulated the plain feel exception as being requiring probable cause to do. The question of whether a frisk can be done is based on the information known at the time. Your position is there was no frisk done until after the bag was removed. And so feeling a hard object is part of the totality of the circumstances that was known to the officer at the time they completed the frisk, which was opening the bag. Correct, Your Honor. I think at this point when the purpose of removing the bag was not to frisk it, to check it for weapons, or even to search it, the feeling the hard object in there is one factor that adds to the reasonable suspicion that the defendant was armed and dangerous. Can I go back to the question of whether this was the same guy? Because as I told your colleague, I think there's clearly probable cause to believe the man in the apartment committed a crime. So the question is, is this the man? So on page 5, in footnote 5 of your red brief, you quote JA 43 as saying that Officer Wilson testified that they were the same man. I guess I will say that I've read that and I don't read it the same way. I read him saying, as it turns out, it was the same man, which seems to me to be assuming the answer to the question. Do you have anything else in the record that supports your claim that it was the same man, that the man outside the apartment was the same as the man that they arrested on Fairfield Avenue, other than that statement from footnote 5 of your red brief? I believe it's on page 53, Your Honor, where Officer Wilson is recounting seeing the individual walk toward him on Fairfield Avenue. I think he testified that the individual matched the description, saw him in the identical attire as the man he had seen him, seen change his shirt from the black shirt to the white tank top and that he had the same body structure and that he concluded that it was the same person. And I think because the district court accepted that and made a credibility determination that it was the same individual, I think the defendant would have to show clear error to have that factual finding over there. Where does the district court say that? I believe it is on page 232 or 234, Your Honor. In the district court, it is at least, speaking generally, it's at least in the district court's recitation of the facts, which the district court noted was drawn from the evidentiary hearing. In this case, really, as you look at it, it's the question is, it seems like identifying the person that the officer saw in the vicinity and that person being the person, not necessarily the person who was described because a lot of questions like, was it all black? No, it was black. Or did it have sparkles on it? No, it was all black. Trying to almost get it to fit the person they saw outside and then you found the person outside, is it really a connection there? Because even with the gun, the lady said, no, well, gunfire all the time. I'm not sure it was a gunfire at all. They did strike her in the face. So where's the reasonable suspicion that he had of that that person outside had a gun? Because, really, that's what he's identifying. He's following the person I saw outside. Yes, Your Honor. But he's not following a real description from the person who's the victim because that person was saying, I don't know his name. He wasn't wearing what you're talking about, gunfire. No, I don't think it was gunfire. I hear it all the time. It didn't happen here. So you're making it fit in the round peg in the square hole because, no, I'm convinced that the person I saw out here, and that's who was followed. But being the person outside, isn't it? So I think it's important to distinguish between what the victim told the police officers and what the woman who called 911, the complainant, told the officers. So the victim, Officer Tyree Williams tested, was very uncooperative, refused to name her long-term boyfriend, said she didn't remember, and so was not really forthcoming. And so I think police officers aren't required to accept that as being reliable when a witness is being uncooperative. The other thing I would point out is that courts have held that the description of the suspect need not be exact because of the reasonable suspicion standard. So a black shirt and dark pants that are generally the same as an all-black versus a black shirt with colors is sufficient to support reasonable suspicion, especially in light of the defendant's flight from police officers in the immediate temporal and physical proximity to where the crime was reported. So I don't think that factor alone, the distinction between an all-black shirt and a black shirt with sparkles, is enough to defeat reasonable suspicion, particularly in light of the other circumstances. So any black man in the area with wearing black, they could do the same thing, too, that they did here, couldn't they? Your Honor, I think they would need more than just, they would need the temporal and physical proximity, they would need flight from police officers. I don't think just... No, no, no, the flight from the police officer. No, the police officer ran after him. We talked about that. Not the first two times, Your Honor. The first two times the man took off running away from police officers without... He walked away the first time, didn't he? No, Your Honor. He walked away, he ran away. He ran away because Officer Wilson testified that he instructed the second patrol car to make a U-turn and stop and talk to that man. And as soon as he saw the car make the U-turn, he took off running. Officer Wilson testified. And he left in the second time. The second time, when Officer Wilson yelled at the other police officers to try to get their attention, the man heard him and then again took off running. After having changed his clothes, again, another indication of avertive behavior. He changed his clothes. He took his shirt off. Yes, Your Honor. He took his shirt off, he put a bag down, and then took off running. But he had on a beater, right? Yes, Your Honor. But that's common to have a beater as the outside shirt, isn't it? The clothing itself, Your Honor, is not suspicious, but again, even innocent facts when put together support reasonable suspicion. And again, I have to point out that the Supreme Court has repeatedly held that flight from police officers is a strong indication of mens rea. So it's not just that a man changed his shirt on the street. It's that he took off running from police officers, went around the corner of a building, changed out of one shirt into another, took off running again when he saw police officers, and then took off running the third time. He was in close temporal and physical proximity to where the crime was reported. But that allows you to make a Terry stop? Yes, Your Honor. Only? Correct, Your Honor. I don't think they had probable cause to arrest at that time. Can I ask one chief follow-up? Sure, sure. One follow-up. I just want to make sure that I understand the full scope of the evidence when I go back to look at it. I understand the district court finding, which is at JA-233, that you referenced. Right in between. And then I understand, yeah, that's not a correction. I just want to make sure I'm not missing something. Right? JA-53 is Wilson's testimony that he's, that the district court is referring to there. If I'm trying, if I'm looking for citations for the following fact, the man that ran the first two times there was reason to believe was the same man that was on Fairfield Avenue. Is there anything else that I look at other than Officer Wilson's testimony and the district court's crediting of that testimony in its opinion? Am I missing any other piece of evidence? I would say that it's corroborated, Your Honor, because the reason Officer Wilson went to Fairfield Avenue in the first place was because his sergeant told him a man who matched the description that he gave was walking down Fairfield Avenue. So to the extent you need it, there's a second officer saying, hey, that individual matches the description that you gave me of the person you saw running. So it's not just Officer Wilson. But I think Officer Wilson's personal observations are probably. Is there any geographic information? So I'm obviously not that familiar with where Fairfield Avenue is in relation, but was it in the direction he was running or do we have any of that? I'm not asking for anything outside the record, obviously, to be very clear. Yes, Your Honor. Do you have any information about that, that that was the direction he was traveling when he was last seen or any of that? Yes, Your Honor, I think so. I don't have the citation in front of me, but there's a portion in the evidentiary hearing where both the prosecution and the defense put up maps of Creighton Court and Fairfield Avenue and had the officers indicate all the locations that these happened. Were those in the JA? The maps I don't believe are in the JA. The discussion surrounding them is. And I can't say that there is a specific— I don't know whether there is a specific statement that it was in the direction that the man was running. If it existed, it would be in that discussion. Thank you. Sorry, Chief. No problem. Ms. Platt, you have some time. Thank you, Your Honors. To pick up on the sort of identity and description point that you all were just discussing, I think I would like to note that there were several mismatches between— and I think as the Court in its entirety was just picking up, there's the description from—my friend was noting that there's the girlfriend, whose name is Ms. Anderson, and the 911 caller, the friend, Ms. Holman. And even if the police officers want to discount the girlfriend who doesn't want to cooperate against her boyfriend, there's a temporal problem at the start between the man that Officer Wilson and Officer Terry Williams saw outside the apartment and the man inside the apartment who there is probable cause to believe committed some version of civil assault. Because Ms. Holman, the friend, not the girlfriend who doesn't want to cooperate, but the 911 caller friend, Ms. Holman, immediately told the police he's long gone. So right when the police saw whoever this guy was outside in Creighton Court, the friend, the 911 caller, said, oh no, but the boyfriend's long gone. So at that point there's already a temporal problem suggesting that whoever Wilson targeted outside might not have been the boyfriend in the first place because the boyfriend was long gone and not according to the non-cooperative girlfriend but according to the 911 caller, Ms. Holman. And that's on the video that this Court can consider directly. Yeah, I thought that was interesting, too, that it's already happened, it took a time to respond, so he's going to wait until the police cars get there visibly and then I'll start running when they get here. But this temporal problem exists from the beginning that whoever Wilson was chasing may not have been the boyfriend. So secondarily, as the Court was noting, there's this problem of the clothing, there's speckled pants, there's blue jeans, there's an all-black shirt, there's a colored shirt, you know, these descriptions didn't match. And Officer Wilson noted, it's in the video and it's in the district court opinion, that's the wrong description. Officer Wilson noted that there was a description problem the whole way through of whoever this person was that he was chasing through Creighton Court and the description of the boyfriend, and again, not just from Ms. Anderson, but also Ms. Holman, the friend, the 911 caller said it was an all-black T-shirt. This is not just to be discounted because the girlfriend doesn't want her boyfriend, you know, to get caught up. Can I ask you about a way to potentially reconcile this that occurred to the people in my office? So let's say there's four people. So Person 1 is the man in the apartment who commits the simple assault. Person 2 is the man that the officers see outside as they arrive. Person 3 is the man who removes the black shirt. Person 4 is the person they arrest. Do all of these problems vanish if you just drop the assumption that Person Number 2 is the same as the others? In other words, if you assume that the person – so I understand the discrepancy being that the man they see outside has colors on his shirt and that doesn't match. I agree with you, that doesn't match the complaining witnesses. But the man they see removing the shirt is wearing an all-black shirt, which matches the complaining witness's description. Or even it wouldn't matter what color that shirt was because he removes it and there's a white. But they see him remove a black shirt, which matches the description of the complaining witness. That also seems to solve the temporal thing you identified. I guess my question is if you imagine that that person just drops out entirely, what I'm calling Person 2, is there any mismatch at all? I think there's – I don't know if I would call it a mismatch, Your Honor, but I think at that point you're getting into an attenuation problem because it's further in time and at this point it's not that late at night. You're in Creighton Court. It's a densely populated place in Richmond with lots of people around. At that point you're getting into a brugal problem where you have not eliminated a sufficient portion of innocent travelers. That could be any man in Creighton Court just removing a shirt. Wait, you just said something which I think opens up the question. How do I know there's a lot of people around? This is a Thursday night at about 11. And when I watch the video, I see very few people outside. I only mean in terms of residents, right? We do know – it's in prior precedent of this court. It's a densely populated housing area of Richmond where hundreds of families live in Creighton Court. But you just asserted that there's lots of people out and about. By around, I meant just that live there. I did not mean out and about outside. I meant just that reside in location because it's a densely populated area of Richmond. And that is, while not in the record, it's in this court's case law. And so I also want to note in terms of the – let's leave it to the flight on Fairfield Avenue. This court in Black at page 538 wrote, quote, Black's subsequent decision to leave does not negate the finding that a reasonable person in Black circumstances would not feel free to leave. This gets back to our Mendenhall free-to-leave test. Quote, instead, Black's decision to leave was an effort to terminate an illegal seizure. This gets back to the point I was trying to make earlier. If I could, again, call the court's attention to footnote three in Black, which is about Brendlin versus California. I really firmly believe that this resolves the Hodari v. Mendenhall test issue in this case specifically because Brendlin on page 255 says, quote, when the actions of the police do not show an unambiguous intent to restrain – that's the end of the quote. So as my colleague was saying, and as they said on page 14 of their brief – this is from the red brief – it is not at all clear that the officer's conduct even rose to the level of a show of authority under Mendenhall. That's a concession here, I think, that this case is governed by Brendlin. That the Hodari D, what they call an attempted seizure problem, is not a problem in this case. This is a Mendenhall free-to-leave case, which means, as the court was indicating, as soon as the police officers rolled up and started yelling at Mr. Buster, hey, we want to talk to you, and started walking at him very quickly, as Chief Judge Gregory was noting, this was a Mendenhall seizure at that point. And so the flight on Fairfield Avenue is not a factor that goes to reasonable suspicion in this case, and Brendlin and this court's decision in black make that clear. So wait, so just so I understand, you reject the notion, even after Torres, that a show of authority, even a show of authority that is not submitted to, you think that is a seizure? I think, Your Honor, under Brendlin and under Torres, if the police show of authority is an unambiguous assertion, like stop in the name of the law or halt police, I think then you get to the Hodari D for Torres type thing, or a physical restraining type thing. But in this case, where it's an ambiguous Mendenhall seizure, but still a Mendenhall seizure, because a reasonable person is not free to leave, then there are no Hodari D problems. I think that's what, again, page 255 of Brendlin makes this very clear. All right. I think I understand your point. So it has to be sufficiently unambiguous that then you get into a Hodari D attempted seizure paradigm. But if it's a Mendenhall free to leave seizure, but it's not sufficiently unambiguous, Brendlin resolves this, again, on page 255.  Finally, Your Honors, let's see. Finally, on the Rule 11 point, my colleague made a good point, which is all that happens if the court does not agree that Bundy and this case are reconcilable is that we go back, you vacate Mr. Buster's legal guilty plea, and then my colleague can either go to trial or do a trial on stipulated facts or whatever. I think there's two problems specifically in this case that are both practical. The first one is, of course, in this case that we've now spent a year in this court. My client has been detained that entire time and so forth. The other thing I would say is that there's a trial penalty, and I understand that that doesn't get into whether you are bound by Bundy or whatever, but the three points that you get for going to trial is not under the guidelines insignificant. So he says there's no harm whatsoever to the defendant for going to trial. That is harm. At least many district court judges award acceptance of responsibility for a trial on stipulated facts. Some, but not all. It's an open thing. But I agree. It occasionally happens. So I thank your honors. I see I have points again. I've noticed, as Judge Hayton said, that the plain feel exception in this case has not ever been argued or referenced until Judge Richardson's query. So if the court has no further questions, we would ask this court to reverse the district court either on the seizure or on the frisk. Thank you, Ms. Platt, and thank you, counsel. I appreciate your arguments. We can't come down and shake your hands under our circumstance, but please know that we very much appreciate your being here and helping us resolve these very thorny issues. And I wish you well, and be safe. Thank you, your honors. Thank you.
judges: Roger L. Gregory, Julius N. Richardson, Toby J. Heytens